**UNITED STATES of America,**
**Plaintiff,**

v.

**Juan LEDEZMA–RODRIGUEZ,**
**Defendant.**

3:00–cr–00071

United States District Court,
S.D. Iowa.

Signed 04/10/2017

Richard E. Rothrock, Des Moines, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Judge

Before the Court is Defendant Juan Ledezma–Rodriguez's Motion to Reduce Sentence, filed on January 10, 2017. Clerk's No. 199. The Government filed a resistance in response on February 27, 2017. Clerk's No. 200. The matter is fully submitted.

On February 28, 2002, Defendant was sentenced to two life terms of imprisonment and one thirty-year term, all three terms to run concurrently; he was further sentenced to one sixty-month term of imprisonment to be served consecutively to the other three terms. Clerk's No. 144. The sentences were imposed after Defendant was found guilty of two counts of conspiracy to distribute cocaine and methamphetamine in violation of 21 U.S.C. § 841(b)(1)(A), one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(b)(1)(C), and one count of use of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). *Id.* Defendant appealed his convictions and sentences. Clerk's No. 145. The Eighth Circuit Court of Appeals affirmed on September 9, 2002. Clerk's No. 163.

On September 12, 2003, Defendant petitioned this Court for relief pursuant to 28 U.S.C. § 2255, alleging he suffered from constitutionally deficient assistance from his attorney leading up to his trial. Clerk's No. 168. The Court denied Defendant's § 2255 petition on March 17, 2004. Clerk's No. 178. On April 8, 2004, Defendant filed a motion for reconsideration of the denial of § 2255 relief; this Court denied the motion on May 18, 2004. Clerk's Nos. 180, 181. Defendant appealed this Court's rulings on his § 2255 request, and the Eighth Circuit Court of Appeals affirmed. Clerk's Nos. 182, 192.

On July 19, 2016, Defendant filed a motion for modification of his sentence, requesting that this Court reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and U.S. Sentencing Guidelines § 1B1.10.

Clerk's No. 197. The Court denied this motion on August 1, 2016. Clerk's No. 198.

■ In his present motion, Defendant once again asks this court to reduce his sentence, this time in light of an order issued by the United States District Court for the Eastern District of New York in *United States v. Holloway*, 68 F.Supp.3d 310 (E.D.N.Y. 2014). Clerk's No. 199. Since *Holloway*, pro se defendants in numerous jurisdictions have argued that that case stands for the proposition that sentencing courts have authority to unilaterally reduce defendants' sentences. *See, e.g., United States v. Sumner*, 210 F.Supp.3d 21, 23–25, 2016 WL 5415608, at *3 (D.D.C. 2016); *Brown v. United States*, No. 1:00-CR-290, 2016 WL 4745822, at *2 (N.D. Ohio Sept. 13, 2016); *Acuna v. United States*, No. 07-00615, 2016 WL 3747531, at *2 (D. Haw. July 8, 2016). In his motion, Defendant argues,

> The *Holloway* doctrine recognizes that the District Courts have the discretion, inherent in our American system of justice, to subsequently reduce a defendant's sentence in the interest of fairness "even after all appeals and collateral attacks have been exhausted and there is neither claim of innocence nor any defect in the conviction or sentence" when it has clearly been demonstrated that the original sentence sought by the United States and imposed by the District Court (even when mandated by law) is revealed to be disproportionately severe.

Clerk's No. 199 at 1–2 (quoting *Holloway*, 68 F.Supp.3d at 311).

However, Defendant misapprehends the *Holloway* court's order. The *Holloway* court did not conclude or even suggest that it had unilateral discretion to reduce the defendant's sentence. *Holloway*, 68 F.Supp.3d at 311. Rather, the court recognized that the prosecuting U.S. Attorney alone held the power to affect the defendant's sentence because the prosecutor wields the discretion, which "inheres in our adversarial system," to seek to vacate one or more of the defendant's convictions. *Id.*

In *Holloway*, the court vacated two of the defendant's convictions and was therefore able to resentence the defendant to a lesser term of incarceration; however, the salient factor was the prosecutor's decision to agree to the vacatur, without which the court had possessed no authority to act. *Id.* at 315–16. Holloway demonstrates that "the Department of Justice, as the government's representative in every federal criminal case, has the power to walk into courtrooms and ask judges to remedy injustices." *Id.* at 316. The *Holloway* court's written order is in fact a plea to U.S. Attorneys throughout the nation to exercise their prosecutorial discretion "in the spirit of fairness" to achieve just results for defendants even after they have been convicted. *Id.* at 311, 317 ("A prosecutor who says nothing can be done about an unjust sentence because all appeals and collateral challenges have been exhausted is actually *choosing* to do nothing about the unjust sentence.").

■ The courts, on the other hand, are strictly limited in their ability to modify sentences. Indeed, as a general matter, "court[s] may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). There are only three narrow exceptions to this rule: a court can modify a term of imprisonment (1) upon motion of the Bureau of Prisons; (2) when expressly permitted by statute; or (3) when the applicable sentencing range of the U.S. Sentencing Guidelines has been amended and made retroactive. *See* 18 U.S.C. §§ 3582(c)(1)(A), (c)(1)(B), (c)(2). Defendant has not alleged any of these exceptions are applicable to the facts of his case, and there is therefore no basis in the

record to conclude that the Court has the authority to modify Defendant's term of imprisonment at this time.

Although the Court has no authority to reduce Defendant's sentence, it has had occasion to reevaluate Defendant's sentence and concludes the sentence is manifestly unjust. Within the last few years, Defendant submitted a pro se petition requesting clemency from the President of the United States. At that time, the undersigned corresponded by email with the prosecuting U.S. Attorney and the U.S. Pardon Attorney in support of Defendant's petition. A reproduction of that email, dated September 23, 2016, is attached to this order. In that email, the undersigned described how Defendant was charged, convicted, and sentenced in an era in which the sentencing Court had no discretion to craft an appropriate sentence in light of the circumstances of the case. If Defendant were prosecuted for the same conduct today, his *maximum* exposure would be to 30 years of incarceration as opposed to the mandated life term he received in 2002. This discrepancy is a purely arbitrary byproduct of the points in time at which the offense conduct was prosecuted and Defendant was sentenced; it has no basis in the offense conduct itself, in the character of the Defendant, or even in the policy goals of sentencing espoused by our criminal justice system. *See* 18 U.S.C. § 3553(a)(2).

There is no justice in the mandatory sentence Defendant received. As did the court in *Holloway*, this Court is compelled to exhort the prosecuting U.S. Attorney to revisit and review this case with a critical eye. At this time, the Government has expressly declined to make any concessions or take any action in this case. *See* Clerk's No. 200. But in the interest of justice—an interest necessarily shared by the Government, Defendant, and this Court—it would be a most laudable course for the U.S. Attorney to consider taking any available steps toward the remedy of the inauspicious and undeserving fate that has befallen this Defendant.

Unless and until such steps are taken, the Court does not have the authority to grant Defendant's request. Therefore, this Motion to Reduce Sentence must be and is DENIED.

IT IS SO ORDERED.

### Attachment

From: Robert Pratt

To: [U.S. Attorney]

Cc: [U.S. Pardon Attorney]

Date: 09/23/2016 02:18 PM

Subject: Clemency Petition of Juan Ledezma–Rodriguez Southern District of Iowa, Conviction No. 3:00–cr–00071, Clemency # 12219–030

I write concerning Juan Ledezma Rodriguez. His package of information was provided to me by the Federal Public Defender's office for the Southern District of Iowa. To my knowledge, Mr. Ledezma Rodriguez does not have an attorney helping him with his Petition for clemency. I have reviewed all of the materials that were provided to me and have also reviewed the entire court docket of the case in the Southern District of Iowa.

On February 26, 2001, Mr. Ledezma Rodriguez entered a plea of guilty to Count Three of a third superseding indictment, which charged him with possessing a firearm while being unlawfully in the United States. On March 26, 2001, he entered a plea of guilty to Count Five of the third superseding indictment, which charged him with possessing powder cocaine with intent to distribute. On July 19, 2001, the Government filed a motion to revoke Mr. Ledezma Rodriguez's plea agreements on the basis that Mr. Ledezma Rodriguez had

committed a material breach by not accepting the Government's characterization of his criminal record as qualifying him as a "career offender." On July 27, 2001, the Court set aside both plea agreements. The Government filed a fourth superseding indictment on September 12, 2001, charging Mr. Ledezma Rodriguez with seven separate counts.

A jury trial on Counts Four, Five, Six, and Seven culminated in a verdict of guilty on all counts on November 1, 2011. On November 19, 2001, the Government dismissed Counts One, Two and Three of the indictment. It is important to point out that prior to trial in this case, the Government had served Mr. Ledezma Rodriguez with two notices of prior conviction pursuant to Section 851. Specifically, on January 8, 2001, the Government noticed a "prior drug felony" that occurred in the state of Oregon on November 16, 1992; on March 19, 2001, the Government noticed a second "prior drug felony" for delivery of a controlled substance in Marion County, Oregon that occurred sometime "between November 26, 1990 and December 19, 1990." By these two notices of prior conviction, the Government effectively determined and mandated that Mr. Ledezma Rodriguez's sentence would be life imprisonment upon his conviction for either Count Four or Count Six of the fourth superseding indictment. As well, Mr. Ledezma Rodriguez faced a mandatory consecutive term of five years imprisonment upon his conviction for Count Seven (using a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)). Thus, on February 28, 2002, I had no choice but to sentence Mr. Ledezma Rodriguez to life imprisonment for his conviction on Counts Four and Six, and a consecutive 60 month term of imprisonment on Count Seven. I also sentenced Mr. Ledezma Rodriguez to a thirty year concurrent term of imprisonment on Count Five. This yielded a total final sentence of life imprisonment plus sixty months.

It is important to note at the outset of this discussion that Mr. Ledezma Rodriguez was a non-violent, low-level offender with no ties to large scale criminal organizations or drug cartels. He was one of 8 children born in Michoacon, Mexico. Mr Ledezma Rodriguez's parents separated when he was 13 and he came to the United States in approximately 1990 when he was 17 years old. As mentioned, on August 15, 1990, at age 17, he was convicted in Oregon for possessing cocaine. Shortly thereafter, Mr. Ledezma Rodriguez was deported to Mexico for the first time (the PSR provides conflicting dates, but it appears this deportation was on either August 22 or September 22, 1990). On November 19, 1990, he was convicted for delivering cocaine in the previously referenced Marion County, Oregon case and sentenced to 60 days confinement and 24 months' probation. On January 25, 1991, he was again deported to Mexico. On June 10, 1991, he was sentenced to 30 days' confinement and two years' probation for delivery of cocaine in Polk County, Oregon. He was deported a third time on December 12, 1992. Importantly, only the June 10, 1991 conviction hints at anything even remotely resembling violence. In that case, Mr. Ledezma Rodriguez is alleged to have fired an automatic handgun before handing the gun to another person who then also fired the gun. Notably, however, Mr. Ledezma Rodriguez was not charged with possession of a firearm. Likewise, despite his conviction for possessing a firearm illegally in this case, there is no assertion in the offense conduct portion of the PSR that Mr. Ledezma Rodriguez used such firearms in relation to any other offense or that he ever used violence of any kind.

The case against Mr. Ledezma Rodriguez resulted from information from a confidential informant and a corresponding investigation into the activities of Jesus Segura-Rico by the Southeast Iowa Inter-Agency Drug Task Force and the DEA. As part of this investigation, law enforcement initiated a traffic stop of Mr. Ledezma Rodriguez on February 2, 2000, and found he was carrying $3,189.00 cash and a semi-automatic firearm. Because of the amount of drugs involved in this conspiracy, Mr. Ledezma Rodriguez's base offense level was 38. He received a two point enhancement for directing at least one other person, resulting in a total adjusted offense level of 40. Based on the two prior drug convictions he received at the ages of 17 and 19 (the subjects of the Section 851 Notices), Mr. Ledezma Rodriguez was found to be a career offender. His mandatory sentencing guideline range would ordinarily have been 360 months to life. However, because of the two Section 851 Notices, he necessarily faced a mandatory minimum term of life imprisonment.

Mr. Ledezma Rodriguez has been in local jails and federal prisons since his arrest on February 2, 2000. Given that he is serving a life sentence he will die in prison unless his petition is granted. If this case were being prosecuted today, the August 2013 memo by Attorney General Holder counsels that the Government would not have filed the Section 851 notices of prior drug felonies, which were committed when Mr. Ledezma Rodriguez was merely 17 and 19 years of age. Without such notices, the maximum exposure he would face under the counts of the fourth superseding indictment would be the statutory maximum of thirty years on Count Five. Additionally, I would have much more sentencing discretion if Mr. Ledezma Rodriguez were sentenced today. The sentencing guidelines are now advisory in nature, and the drug guidelines have been significantly lowered since the prosecution of this case. I am confident that I, and most judges, would find Mr. Ledezma Rodriguez deserving of a variance after consideration of the 3553(a) factors. And I am equally confident that any sentence ultimately imposed after such variance would not exceed the sixteen plus years Mr. Ledezma Rodriguez has already served.

Mr. Ledezma Rodriguez has maintained a good record in prison and has no serious disciplinary violations. He is now 53 years of age, having been born on April 17, 1973. The sentencing commission studies tell us that people tend to "age-out" of criminal activity at his point in life. He has no serious violence in any of his previous criminal activity. His convictions came about at an early age. Like so many defendants who received excessively long sentences in the pre-*Booker* and *Gall* era, Mr. Ledezma Rodriguez was an addict. He was a long-time user of both legal and illegal drugs, having begun using alcohol as early as age 13 or 14 in his native Mexico. At the time of sentencing, he was married to Norma Oseguera, who works in a meat packing facility in Salem, Oregon. According to Mr. Ledezma Rodriguez, Norma is not fully aware of his situation. She is also a U.S citizen who would not care to relocate to Mexico if Mr. Ledezma Rodriguez is deported. The couple has three children, who were only 8, 6, and 4 years old at the time of sentencing. Mr. Ledezma Rodriguez is extremely remorseful over his violation of the law, particularly to the extent it has affected his family. As he writes in his pro se "reasons for seeking clemency": "My dream was to give my children a career, since education is the basis for a better future. But I went about it the wrong way and ultimely [sic] ended up with this life sentence ... there is nothing

more I wish than to never had been a participant of the unlawful conduct I once engaged in. It was the depths of my addictions when I committed the instant offense." Mr. Ledezma Rodriguez recognizes that if he is released, he will face deportation to Mexico. He represents in his petition that he has inherited a butcher shop there which will allow him a good chance for a career. As well, he has learned many trade skills while incarcerated. Both of these factors will help Mr. Ledezma Rodriguez meet his goal of creating a better life for himself, for his elderly mother, and for his children.

I believe the facts support a conclusion that Mr. Ledezma Rodriguez is deserving of clemency. The sentence is this case was clearly violative of the command of Congress that a sentence be "sufficient but not greater than necessary."

Thank you for taking the time to review my letter.

Sincerely,

Robert W. Pratt

Judge, United States District Court

Southern District of Iowa